Sosman, J.
Plaintiff F.W. Webb Company (‘Webb”) brought the present action to collect on a promissory note of defendant Oil Burner Service, Inc. (“Oil Burner”) and the personal guarantee of defendant Timothy O’Brien, the president of Oil Burner. Webb has moved for summary judgment on that note and guarantee. For the following reasons, plaintiffs motion is allowed.
Facts
Beginning in 1984, defendant O’Brien d/b/a Oil Burner Service began purchasing equipment from plaintiff Webb. On April 5, 1984, O’Brien submitted an Application for Credit to Webb, identifying Oil Burner Service as a proprietorship “(p)resently in the process of incorporating.” On the application form, O’Brien signed a personal guarantee of “payment for all purchases made by said persons or company.”
In March 1991, O’Brien gave Webb a promissory note of Oil Burner (by then incorporated) in the amount of $27,000. Accompanying that note was a securify agreement, granting Webb a securify interest in all of Oil Burner’s assets to secure the payment of all debts to Webb, “due or to become due, now existing or hereafter acquired.” O’Brien also signed, and Webb proceeded to file, the requisite financing statement on Form UCC-1.
Also attached to the note was a guarantee signed by O’Brien. The document is, on its face, a personal guarantee of all of the obligations of Oil Burner to Webb, including all amounts “due or to become due, . . . , now existing or hereafter arising or acquired.” The guarantee was drafted with signature lines for “Timothy P. O’Brien” and "Mrs. O’Brien.” Defendant O’Brien signed the document and, in his own handwriting, added the word “President” after his signature. The signature line for “Mrs. O’Brien” was left blank.
In May 1992, the parties negotiated and O’Brien executed a new promissory note in the amount of $47,945.08.[1] Defendant O’Brien contends (and the court must accept as true for the purposes of this summary judgment motion) that he executed the May 1992 note on certain conditions, including a discharge of the earlier note in the amount of $27,000.00. He also claims that Webb agreed to execute a new securify agreement, “release” the prior UCC financing statement, and replace it with a new financing statement.
O’Brien went to Webb’s office on May 14, 1992 to sign the new promissory note. He claims that Robert Blades, the general manager for Webb, told him that the discharge of the earlier note and the “release” of the UCC financing statement would be sent to him in a couple weeks after processing at the office of the Secretary of State. O’Brien proceeded to execute the $47,945.00 note.
On July 1, 1992, Blades sent O’Brien a letter confirming that the March 15, 1991 promissory note “has been paid in full.” With respect to the financing statement, Blade’s letter explained as follows:
The UCC forms signed for the above note are good for up to five years. The same UCC forms are being used for the current note of $43,000.00.
If you have any questions, please call.
O’Brien claims that he called Blades and told him that Oil Burner would not execute a second security agreement or a second UCC financing statement.
The May 14, 1992 note has not been paid. As of the date this action was filed, the unpaid balance was $46,645.00. The note provides that the maker is liable for attorneys fees incurred in connection with collection or enforcement.
Discussion 1. Promissoiy note
Defendant Oil Burner has no defense to the suit on the note. The note was executed by Oil Burner’s president, it has not been paid, and it is now due and owing.[2]
Defendants argue that there are disputed issues of material fact with respect to the securify agreement and UCC financing statement that would preclude summary judgment on the note itself. Defendants contend that Webb failed to draft a new securify agreement and new financing statement for the May 1992 note, and that this failure somehow relieves Oil Burner of its obligations under the note.
As described by O’Brien, the May 1992 note was conditioned on the release of the earlier note. That condition was satisfied by Blades’s letter confirming in writing that the earlier note had been paid in full.
O’Brien then tries to claim that a new security agreement and new financing statement were also part of the agreement. He does not contend that this proposed new securify agreement/financing statement was to have different terms, or that there was any negotiation of new terms regarding collateral for the loan. Rather, O’Brien makes the legally incorrect assumption that the prior security agreement and financing statement would not be valid for a later executed note and that Webb would need new docu *250 mentation in order to have a valid, perfected security interest.
Even if O’Brien’s understanding of the legal ramifications of the documents were correct,[3] lack of a valid security interest would not impair the note itself. Nor would Webb’s alleged “breach” of this condition be of any consequence to Oil Burner or O’Brien, as the alleged “condition” would be a condition benefitting only Webb itself. If there are defects in Webb’s security interest, those defects hurt Webb, not Oil Burner. The alleged failure of Webb to follow through on the drafting and execution of a new set of documents reflecting its status as a secured creditor does not constitute a breach that would relieve Oil Burner of the underlying obligation on the note.
2. Guarantee
O’Brien seeks to evade liabiliiy on his personal guarantee of Oil Burner’s obligations by claiming that he signed the document only in his capacity as president of Oil Burner. O’Brien has not indicated that there were any discussions or negotiations about the guarantee that would provide any basis for reading the document and signature as anything other than a personal guarantee. The only fact that he puts forward to defeat summary judgment on the guarantee is the wording of the signature itself. He relies on his own handwritten addition of the word “President” as evidence that he did not guarantee this obligation personally.
From the outset of Oil Burner’s dealings with Webb, O’Brien had personally guaranteed the obligations of his company (as reflected in the unambiguously signed personal guarantee on the original credit application). The March 1991 document itself is, by its plain wording, a personal guarantee. It is titled “Guaranty," and its straightforward terms describe a personal guarantee. The document identifies Oil Burner as the “Customer,” with the “Guarantor” identified as the “undersigned.” Typical of any guarantee, the document provides that the “Guarantor” guarantees payment of the “Customer’s” (i.e., Oil Burner’s) obligations to Webb.
O’Brien argues that his signature followed by the word “President” makes Oil Burner the guarantor, not himself individually. A guarantee of a note signed by the same entity as the maker of the note would be a meaningless document. The maker (Oil Burner) is already liable on the underlying obligation. The entire purpose of a guarantee is to make some other person or entity responsible for payment if the obligor fails to pay. O’Brien’s unilateral insertion of the word “President” after his signature on such a guarantee can not frustrate the clear purpose of the document, its clear wording, or the clear history of prior dealings between the parties.
The guarantee is enforceable according to its terms, and O’Brien is personally liable for Oil Burner’s obligations to Webb.
ORDER
For the foregoing reasons, plaintiffs motion for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of plaintiff against defendants Oil Burner Service, Inc. and Timothy P. O’Brien in the amount of $46,645.00, plus interest at the rate of 12% per annum from the date of filing of this action, plus attorneys fees and costs.

That figure is explained in the note itself as principal in the amount of $43,000 plus interest that had already accrued on Oil Burner’s outstanding balance. Later reference in the parties’ correspondence to the “note of $43,000.00" refers to this same note.

In his affidavit submitted in opposition to plaintiffs earlier motion for injunctive relief, defendant O’Brien acknowledged Oil Burner’s obligation under the note: “Oil Burner has every intention to pay the remaining amounts owed under the terms of the second promissory note.”

The existing security agreement expressly covers obligations later incurred, which would include the second promissory note, and the UCC financing statement was valid for a period of five years. There was no need for any new documentation to give Webb a valid, perfected security interest in Oil Burner’s assets. Plaintiffs earlier motion for injunctive relief with respect to the collateral was allowed.